IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

Ann Smith, Tommie Reece, John Pettigrew, )
Bob Shirley, Robert Tinsley,  and others )
similarly situated, )
                         )
         Plaintiffs, )
                         )
      v. )
                         )
The State of South Carolina Election )
Commission and the State of South )
Carolina, )
                         )
         Defendants. )
                         )

C.A. No. 3:12-CV-1543-CHH-CMC-JMC

OPINION AND ORDER

     This opinion sets forth the reasoning behind the court's denial of Plaintiffs' motion for a

temporary restraining order. *See* Dkt. No. 4 (motion); Dkt. No. 9 (docket text order denying motion).

Through that motion, which was filed with the complaint on June 11, 2012, Plaintiffs sought either

to have their names restored to the ballot for the June 12, 2012 primary election or to postpone the

election until this court could resolve the issues raised in this action. Dkt. Nos. 1, 4.  A three-judge

court was empaneled, heard oral argument telephonically, and denied the motion on the afternoon

of June 11, 2012.  Dkt. Nos. 7-9.

## BACKGROUND

     The five named Plaintiffs[1] are all individuals who sought to be included on the  ballot for the

June 12, 2012 primary election but were allegedly denied that opportunity due to application of the

following decisions of the South Carolina Supreme Court ("State Court"): *Anderson v. South*

---

    [1]  Plaintiffs purport to pursue this action on behalf of themselves "and others similarly
situated." Dkt. No. 1 at 1.

*Carolina Election Commission*, 725 S.E.2d 704, 2012 WL 1530655 (S.C. May 2, 2012) ("*Anderson*

*I*"), *rehearing denied* Order No. 2012-05-03-05, 2012 S.C. LEXIS 99 (S.C. May 3, 2012)

("*Anderson* Order") (collectively "*Anderson*"); and *Florence County Democratic Party. v. Florence*

*County Republican Party*, __ S.E.2d __, Slip. Op. No. 27128, 2012 WL 1999845 (S.C. June 5, 2012)

("*Florence County*").  These decisions addressed application of three distinct provisions of South

Carolina law:  S.C. Code Ann. § 8-13-1356 (Supp. 2011) (titled "Filing of statement of economic

interests by candidates for public office.");  S.C. Code Ann. § 8-13-365 (Supp. 2011) (titled

"Electronic filing system for disclosures and reports; public accessibility."); and S.C. Code Ann. §

7-11-15 (Supp. 2011) (titled "Qualifications to run as a candidate in general elections.").  As a result

of these three decisions, a large number of primary candidates were decertified because they had not

filed their Statement of Economic Interest ("SEI") with the relevant party officials at the same time

they filed their Declaration of Candidacy (referred to hereinafter as "SIC" ).[2]  Given the genesis of

Plaintiffs' claims, the court begins with a summary of the State Court decisions.[3]

---

[2]  Other provisions of South Carolina law refer to filing of "statements of intention of candidacy."  S.C. Code Ann. § 7-11-15.  Plaintiffs use this terminology in their complaint and memorandum, referring to filing a "Statement of Intention of Candidacy" or "SIC," as did the South Carolina Supreme Court ("State Court") in its decisions addressed herein.  For purposes of consistency, this court uses the same terminology, recognizing that the terms "Statement of Intention of Candidacy" and "SIC" refer to the same document as the "declaration of candidacy" referred to in § 8-13-1356.

[3]  This is the second time this court has been asked to address the impact of *Anderson* and to halt the June 12, 2012 primary election.  The court first addressed *Anderson* in *Somers v. South Carolina State Election Commission*, 3:12-cv-1191-CMC-CHH-JMC ("*Somers*"), which was filed on May 4, 2012 and resolved on May 16, 2012.  Plaintiff John Pettigrew sought and was granted leave to intervene in that action.  *Somers*, Dkt. Nos. 17, 18.  He subsequently withdrew after the named Plaintiff narrowed the scope of her claims.  *Somers*, Dkt. Nos. 19, 20, 26.

*Anderson.* *Anderson* was filed by two voters who challenged inclusion of certain candidates on the June 12, 2012 primary ballot. These voters argued that the challenged candidates were not qualified because they failed to comply with an express requirement of S.C. Code Ann. § 8-13-1356(B) that "[a] candidate must file a statement of economic interests . . . at the same time and with the same official with whom the candidate files a declaration of candidacy or petition for nomination." The candidates in question had failed to file their SEIs with the same official and at the same time they filed their SICs.[4]

In its decision on the merits (*Anderson I*), the State Court concluded that § 8-13-1356 required precisely what it said: the SEI must be filed at the same time and with the same official as

---

[4]    Section 8-13-1356, which addresses "[f]iling of statement of economic interests by candidates for public office[,]" includes the following relevant provisions:

(A)    This section does not apply to a public official who has a current disclosure statement on file with the appropriate supervisory office pursuant to Sections 8-13-1110 or 8-13-1140.

(B)    A candidate must file a statement of economic interests for the preceding calendar year at the same time and with the same official with whom the candidate files a declaration of candidacy or petition for nomination.

* * *

(E)    An officer authorized to receive declarations of candidacy and petitions for nominations under the provisions of Chapter 11 of Title 7 may not accept a declaration of candidacy or petition for nomination unless the declaration or petition is accompanied by a statement of economic interests. If the candidate's name inadvertently appears on the ballot, the officer authorized to receive declarations of candidacy or petitions for nomination must not certify the candidate subsequent to the election.

This section was initially adopted in 1991 and became effective January 1, 1992.

S.C. Code Ann. § 8-13-1356.

3

the SIC. The State Court further concluded that the separate provisions of S.C. Code Ann. § 8-13-365, which require electronic filing of various disclosure documents (including SEIs) with the Ethics Commission, did not conflict with or override the plain language of § 8-13-1356.[5] As the State Court explained:

> The Democratic Party additionally directs our attention to S. C. Code Ann. § 8-13-365 (Supp. 2011), requiring that the SEI be filed electronically, which is done on the State Ethics Commission's website. However, this statute is not part of the process that qualifies an individual for inclusion on the ballot. Similarly, while S. C. Code Ann. § 8-13-1170(B) (Supp. 2011) provides that extensions of time for electronic filing of an SEI with the State Ethics Commission may be granted, that also does not concern ballot requirements. Accordingly, we reject the argument by the Democratic Party that the requirement of § 8-13-1356(B) may be alternatively satisfied by filing an SEI electronically with the State Ethics Commission. Filing an SEI with the State Ethics Commission cannot excuse noncompliance with § 8-13-1356(B).

*Anderson I*, Slip. Op. at 4.

The State Court also rejected an argument that S.C. Code Ann. § 7-11-15 overrode the provisions of § 8-13-1356, explaining as follows:

> We reject the argument of the South Carolina Republican Party that S. C. Code Ann. § 7-11-15(3) (Supp. 2011), which provides that an individual's name must appear on the ballot if the individual produces a signed and dated copy of a timely filed SIC, is irreconcilably in conflict with § 8-13-1356. Instead, we hold, as recognized by the remaining parties in this action, that these two statutes may be harmonized. Section 7-11-15(3) sets forth the requirements for an individual's name

---

[5] Section 8-13-365 applies to "all disclosures and reports required pursuant to Chapter 13, Title 8 and Chapter 17, Title 2." S.C. Code Ann. § 8-13-365(A). It provides that these "disclosures and reports must be filed using an Internet-based filing system as prescribed by the [South Carolina State Ethics] Commission." *Id.* Section 8-13-365 was originally enacted in 2003 and became effective November 3, 2004. From its inception, it has covered disclosures and reports required by Chapter 13, Title 8. Its coverage of disclosures and reports required by Chapter 17, Title 2, was the result of a 2010 amendment, which became effective in January 2011. *Id.* (Effect of Amendment). It appears that the electronic filing system was not fully implemented by the Ethics Commission until 2010 or 2011.

4

> to appear on the ballot "except as otherwise provided by law." Section 8-13-1356(E) expressly references Chapter 11 of Title 7 and prohibits a political party from accepting an SIC for filing if it is not accompanied by an SEI. Therefore, an individual who fails to provide an SEI to the political party when filing an SIC would not have a timely filed SIC. We decline to ignore the "except as otherwise provided by law" language of § 7-11-15(3) and the clear mandate the General Assembly imposed in § 8-13-1356(E) when the statutes are easily reconciled.

*Anderson I*, Slip. Op. at 4. On application for rehearing or clarification, the State Court held that delivering a copy of a previously electronically-filed SEI with the SIC satisfied the "filing" requirement of § 8-13-1356, but that delivery of a receipt, electronically mailing a copy, or any other alternative or later delivery of the SEI did not. *See Anderson* Order (S.C. May 3, 2012).

In issuing the *Anderson* Order, the State Court "direct[ed] the parties to file with the South Carolina Election Commission or the appropriate county election commission by noon on May 4, 2012, a list of candidates who complied with § 8-13-1356 as the statute is written and as has been interpreted by this Court." *Anderson* Order at 2; *see also Anderson I*, Slip. Op. at 5 ("We direct the appropriate official of the political parties to file with the State Election Commission or the appropriate county election commission, by noon on May 4, 2012, a list of only those non-exempt candidates who simultaneously filed an SEI and an SIC as required by § 8-13-1356(B)."). A large number of candidates were disqualified after a review of their filings in light of *Anderson I* and the *Anderson* Order.

***Florence County.*** *Florence County* was filed by the Florence County Democratic Party and others challenging "alleged improper certification of certain candidates by the Florence County Republican Party." Op. No. 27128 at 2. Plaintiffs argued and the State Court found that "these candidates were improperly certified because they failed to comply with the requirements for filing

5

[an SEI] contained in S.C. Code Ann. § 8-13-1356 (Supp. 2011), as interpreted by [the State Court] in *Anderson*[.]" *Id.* The State Court rejected the County Republican Party's argument that the candidates in question were exempt from the filing requirement under § 8-13-1356(A), summarizing its prior decision in *Anderson* and the County Republican Party's position as follows:

> In *Anderson*, this Court held § 8-13-1356 requires non-exempt candidates to file an SEI along with a Statement of Intention of Candidacy (SIC). In response to a request for rehearing and clarification, the Court clarified that filing a paper copy of an SEI simultaneously with the filing of an SIC is the only method by which a non-exempt individual can comply with § 8-13-1356.

> The County Republicans admit that they certified individuals as candidates who did not comply with the filing requirements of § 8-13-1356(B), as construed by this Court in *Anderson*. However, they contend that, because the term "candidate" is included in the definition of "public official," the candidates who filed their SEIs online prior to filing an SIC with the County Republicans had SEIs on file and were public officials who were exempt under § 8-13-1356(A) from filing paper copies of their SEIs with the political parties as required by § 8-13-1356(B). They argue the reasoning behind the definition of candidate in § 8-13-1300(4), which includes a person exploring whether or not to seek election, is to ban an individual from raising funds during an exploratory period without any of the statutory caps on campaign contributions or disclosure requirements. They contend the candidates they claim are exempt under § 8-13-1356(A) were public officials when they filed their SICs because they were exploring whether to seek office, and they had current SEIs on file at the time they filed their SICs.

> According to the County Republicans, since *Anderson* only requires paper copies of an SEI to be filed by "non-exempt" individuals, and the individuals who failed to file SEIs along with their SICs were "exempt," *Anderson* does not apply to them.

*Florence County*, Slip. Op. at 2.

Despite noting that other statutory provisions defined "public official" broadly to include "candidates for [public] office," *slip. op.* at 2 (quoting S.C. Code Ann. § 8-13-1300(4), (28)), the State Court rejected the County Republicans' argument because it would have rendered § 8-13-1356 meaningless. As the State Court explained:

6

To construe the statutes in the manner suggested by the County Republicans would render § 8-13-1356 meaningless. The section sets forth specific provisions for candidates to file an SEI and is separate and distinct from the general statutory provisions for filing an SEI. *See Spectre, LLC v. S.C. Dep't of Health and Envtl. Control*, 386 S.C. 357, 688 S.E.2d 844 (2010) (where there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect). Indeed, the provisions of § 8-13-1110 requiring public officials to file an SEI with the appropriate supervisory authority are limited by the phrase "unless otherwise provided." Section 8-13-1356 provides otherwise. As decided by this Court in *Anderson,* § 8-13-1356 requires that a candidate must simultaneously file a copy of an SEI with an SIC unless the candidate already holds the office and has an SEI on file with the appropriate supervisory office. This Court's decision in *Anderson* is clear.

*Florence County*, Slip. Op. at 4. After noting that the only matter before the court was the Florence County Republican Party Primary, the State Court, nonetheless, stated that the "decision applies to the political party primaries throughout the State" and warned that other county political parties with improperly certified candidates would "ignore the decisions of this Court at their own peril." *Id.* at 4–5.

**Disqualification of Plaintiffs.** All five Plaintiffs in this action were disqualified based on application of one or more of the decisions referenced above. The timing and specifics of their disqualifications are summarized below.

**Ann Smith ("Smith").** Smith alleges that she delivered her SIC in person to the Anderson County Republican Party Chairman, who then assisted her in electronically filing her SEI. That filing was completed "ten minutes after her SIC was physically delivered." Dkt. No. 1 ¶ 1. Smith alleges that she was initially re-certified following *Anderson I*, but was later decertified and removed from the ballot on June 7, 2012, as a result of the *Anderson* Order and *Florence County. Id.* Smith

7

further alleges that her primary opponent was exempted from the requirement to file an SEI with his SIC because he is the incumbent in the position sought.

**Tommie Reece ("Reece").** Reece currently serves as a member of a public school board and, consequently, had a 2011 SEI on file when she filed an SIC with the Greenville County Republican Party indicating an intent to seek a State Senate seat. Dkt. No. 1 ¶ 2. Because Reece (and apparently the County Chairperson) believed she was exempt under § 8-13-1356(A) from the SEI filing requirement in § 8-13-1356(B), she was not initially required to submit a copy of her SEI with her SIC. She did, however, subsequently provide the County Chairperson with a copy of her 2011 SEI. Upon further request, Reece provided the County Chairperson with a copy of her 2012 SEI, which she filed on March 30, 2012. The complaint does not allege when she provided the copies of her 2011 and 2012 SEIs to the County Chairperson.

Following *Anderson I*, Reece was initially re-certified, but she was decertified on June 7, 2012, based on her county party's interpretation of the *Anderson* Order and *Florence County* "to mean that one [must] not only have *an* SEI on file, but that the SEI on file [must] be for the same seat one is currently seeking." Dkt. No. 1 ¶ 2 (noting that, under this interpretation, the exemption in § 8-13-1356(A) would apply only to the incumbent).

Reece alleges that the county Democratic Party in her county has taken a different position (as to a different senate seat), re-certifying non-incumbent candidates who were serving in some other public office (and had a current SEI on file) at the time they filed their SICs. Reece's primary opponent, the incumbent in the position she seeks, was also deemed exempt under her own party's interpretation of § 8-13-1356(A), as applying only to the incumbent in the position sought.

8

**John Pettigrew ("Pettigrew").**[6]    Pettigrew filed his SIC with the Edgefield County Republican Party Chairperson on March 30, 2012 and his SEI on April 6, 2012. Dkt. No. 1 ¶ 3 (Pettigrew does not state with whom he filed his SEI.).    Although he has previously served in a variety of public positions and filed SEIs connected to that service, he does not suggest that he was serving as a public official or had a current SEI on file at the time he filed his SIC.    Pettigrew was removed from the ballot following *Anderson*.    He includes no allegations regarding other potential candidates for the same position.

**Bob Shirley ("Shirley").**    Shirley presumably filed a timely SIC with the Democratic Party Chair of his county (though he does not provide this information), and subsequently filed an SEI with the Ethics Commission on April 30, 2012.[7] Dkt. No. 1 ¶ 4.    Shirley was decertified following *Anderson.*

Shirley does not suggest that he was a public official or had an SEI on file at the time he filed his SIC.    Plaintiffs do, however, allege that Shirley's Democratic primary opponent was deemed exempt because he was a public official (in a different office than the one he sought) with a current SEI on file at the time he filed his SIC.

**Robert Tinsley ("Tinsley").**    Tinsley completed his SEI and filed his SIC at the State Democratic Party Headquarters on March 30, 2012, just prior to the noon filing deadline.    The

---

[6] As noted above, Pettigrew intervened in an earlier case before this court which challenged *Anderson I* and the *Anderson* Order, but withdrew after the named Plaintiff limited the scope of her claims.

[7] The Complaint asserts that Shirley made "several attempts to complete the SIC online," then "went to the Ethics Commission on April 30, 2012 [for assistance] filing his SEI report." The court assumes the reference to SIC in this sentence is a scrivener's error.

representative who assisted Tinsley did not provide him with a copy of his SEI but "assure[d] him it was printed to his file." Dkt. No. 1 ¶ 5. The Ethics Commission has subsequently stated that Tinsley's SEI was not received until 12:23 p.m., although it has also stated it cannot tell when Tinsley's SEI was received. Following *Anderson*, Tinsley was decertified.[8] Tinsley does not include any allegations regarding other potential candidates for the same position.

**Complaint.** Plaintiffs filed this action on June 11, 2012. Dkt. No. 1. In their first cause of action, Plaintiffs allege a violation of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, based on a failure to preclear changes to voting practices effected by *Anderson I*, the *Anderson* Order, and *Florence County*. *See* Dkt. No. 1 ¶ 12 (alleging these three cases "altered the before then general interpretation of S.C. Code Ann. § 8-13-1356"). The only reference to a specific change is found in the assertion that 215 candidates "have been removed from the ballots for allegedly failing to properly file their SEI simultaneously with their SIC[.]"; *id.* ¶ 13 (also noting that all of these "candidates were removed from the ballots within a 45 day period prior to the election when a sizable number of voters had already cast their absentee ballots").

Plaintiffs' second cause of action alleges that § 8-13-1356 is "unconstitutional and violates [their right to] equal protection." Plaintiffs explain the basis of this claim by stating that the state's "application of this cumbersome and labyrinthic procedure only to non-incumbents has no measurable justification for the burden it imposes – i.e. the fundamental loss of a right to participate in the electoral process via being a candidate for office." *Id.* ¶ 30. Plaintiffs further allege that the State Court's interpretation of this statute "violates the Plaintiffs' due process guarantee under the

---

[8] Tinsley does not indicate whether the decertification was based on the method of his submission of the SEI or its timing.

Fourteenth Amendment in that it unreasonably imposes an undue burden upon non-incumbents for no measurable justification." *Id.* ¶ 31.

The remainder of Plaintiffs' allegations under the second cause of action relate to actions *by county political parties and election commissions*, none of which are parties to this action. Plaintiffs allege that these entities' application of § 8-13-1356 is "unconstitutional *as applied* because the manner in which it is being applied is inconsistent throughout the State." *Id.* ¶ 32 (noting that candidates in different parties in the same county are treated differently).

Plaintiffs' third cause of action seeks attorney's fees pursuant to 42 U.S.C. § 1988.

## DISCUSSION

### I. Standing

Before exercising jurisdiction over this matter, the court must assure itself that Plaintiffs have standing to pursue their claims. *See generally* U.S. Const. art. III, §2 (Article III's case or controversy requirements). To establish standing, (1) a plaintiff must have suffered an "injury in fact," which is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent," not conjectural or hypothetical; (2) the injury must have been caused by the defendant's complained-of actions; and (3) a plaintiff's injury or threat of injury must likely be redressable by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Plaintiffs have the burden of establishing standing. *See id.* at 561.

Plaintiffs are persons who seek to be included as candidates on the ballot of the primary election and who have taken some action to qualify as candidates. As such, they have standing to bring a claim under Section 5 of the Voting Rights Act for alleged changes in voting practices related to qualification and certification of candidates that they allege have not been precleared. *See Allen*

11

*v. State Bd. of Elections*, 393 U.S. 544, 572 (1969) (in consolidated case in which one case was brought by potential candidates, court held private parties, including individual citizens, have standing to insure that their government complies with Section 5 approval requirements). Plaintiffs allege that they were decertified as candidates in the primary election for failure to comply with an unprecleared change in a voting practice effected by Defendants, and those injuries would likely be redressed if this court granted the relief sought.

Through their second cause of action, Plaintiffs allege that § 8-13-1356 "is unconstitutional and violates equal protection." After citing the entire statute, referencing *Anderson*, and quoting *Bush v. Gore*, 531 U.S. 98, 104 (2000), for the proposition that equal protection applies to the manner of exercise of the voting franchise, Plaintiffs argue as follows:

> 30.    South Carolina's application of this cumbersome and labyrinthic procedure only to non-incumbents has no measurable justification for the burden it imposes – i.e. the fundamental loss of a right to participate in the electoral process via being a candidate for office.
>
> 31.    Accordingly, S.C. Code Ann. § 8-13-1356, as interpreted by the South Carolina Supreme Court, violates Plaintiffs' due process guarantee under the Fourteenth Amendment in that it unreasonably imposes an undue burden upon non-incumbents for no measurable justification.

Dkt. No. 1 ¶¶ 30, 31. In addition, Plaintiffs argue that the inconsistent interpretation and application of the exemption in Subsection 1356(A) violates due process and requires that their "names (and those similarly situated) be returned to the ballots[.]" Dkt. No. 1 ¶¶ 32, 33.

These allegations and the relief sought suggest that Plaintiffs are seeking relief under an equal protection and/or due process theory because the statute, as a whole and on its face, imposes greater burdens on non-incumbents than on incumbents and because Subsection 1356(A) has been applied

12

inconsistently to public officials who are not incumbents in the position sought. The court analyzes standing separately for these two theories.

As to their facial challenge, Plaintiffs allege that their equal protection and/or due process rights are violated as a result of the additional burdens that § 8-13-1356 imposes on non-incumbents seeking to be candidates. Plaintiffs are non-incumbents and are subject to the alleged additional filing requirements under § 8-13-1356. The court, therefore, finds that Plaintiffs have standing to challenge the statute on equal protection grounds.

The court reaches a different conclusion to the extent Plaintiffs raise an equal protection and/or due process challenge based on inconsistent application of the exemption in Subsection 1356(A). The alleged inconsistent application suggests two potential injuries, either of which would be sufficient to support standing. First, a Plaintiff might have been injured if he or she would have been deemed exempt under the more generous interpretation of Subsection 1356(A) to apply to any public official, but was denied the benefit of this interpretation. Only Tommie Reece alleges such an injury as she is the only Plaintiff to allege that she was serving as a "public official" at the time she submitted her SIC. Second, a Plaintiff might have been injured if his or her opponent was allowed to remain on the ballot under the more generous interpretation, even if no interpretation would have benefitted the particular Plaintiff.[9] Only Bob Shirley alleges such an injury as he alleges his non-incumbent opponent was given the benefit of the more generous interpretation of Subsection

---

[9] For these purposes, the court assumes a Plaintiff might still seek office as a write-in or petition candidate.

13

1356(A).[10] The court, therefore, concludes that Plaintiffs Reece and Shirley have standing to challenge the alleged inconsistent interpretation of § 8-13-1856(A).[11]

## II. Voting Rights Act

The following standard governs a three-judge district court's decision whether to grant an injunction in a Voting Rights Act Section 5 case: The court "may determine only whether Section 5 covers a contested change, whether Section 5's approval requirements were satisfied, and if the requirements were not satisfied, what temporary remedy, if any, is appropriate." *Lopez v. Montgomery County*, 519 U.S. 9, 23 (1996).

Section 5 of the Voting Rights Act of 1965 requires preclearance for "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 . . . ." 42 U.S.C. § 1973c. A state must obtain preclearance before implementing a voting change by obtaining a declaratory judgment in the United States District Court for the District of Columbia or by submitting a request to the United States Attorney General for approval. *Id.* If the Attorney General approves the change, or fails to register an objection to the change within 60 days, the change is precleared. *See id.* "No new voting

---

[10] Plaintiffs Ann Smith and Tommie Reece allege that they faced incumbents given the benefit of the Subsection 1356(A) exemption. As Subsection 1356(A) clearly exempts incumbents, the court does not find that facing an incumbent who received the benefit of this subsection constitutes an "injury" for purposes of a claim based on inconsistent application.

[11] That Reece and Shirley both have standing does not, however, mean that they have the same interest. While both allege injury by a particular interpretation of Subsection 1356(A), Reece's injury flows from the narrow interpretation and Shirley's injury flows from the generous interpretation.

practice is enforceable unless the covered jurisdiction has succeeded in obtaining preclearance."

*Lopez v. Monterey County*, 519 U.S. 9, 20 (1996).

The United States Supreme Court has defined the voting changes subject to Section 5 very broadly to include any change which alters election law or practices in even a minor way. *See Young v. Fordice*, 520 U.S. 273 (1997) (explaining that even minor changes require preclearance); *Presley v. Etowah County Comm'n*, 502 U.S. 491, 502 (1992) ("§ 5 covers voting changes over a wide range"); *N.A.A.C.P. v. Hampton County Election Comm'n*, 470 U.S. 166 (1985) (holding that increase in candidate filing period while new state law was under preclearance review was a change in voting procedure that requires preclearance); *Perkins v. Matthews*, 400 U.S. 379, 387 (1971) (change in polling places requires preclearance); *Allen v. State Bd. of Elections*, 393 U.S. 544, 566-69 (1969) (finding that legislative history of Voting Rights Act "supports the view that Congress intended to reach any state enactment which altered the election law of a covered State in even a minor way" including a new procedure for write-in votes and changing from paper ballots to voting machines). The United States Supreme Court explained in *Presley v. Etowah Comm'n*, 502 U.S. 491 (1992):

> We agree that all changes in voting must be precleared and [that] the scope of § 5 is expansive within its sphere of operation. That sphere comprehends all changes to rules governing voting, changes effected through any of the mechanisms described in the statute. Those mechanisms are any "qualification or prerequisite" or any "standard, practice, or procedure with respect to voting."

*Id.*, 502 U.S. at 501-02 (citations omitted).

Consistent with *Allen*, the regulations governing Section 5 state:

> Any change affecting voting, even though it appears to be minor or indirect, returns to a prior practice or procedure, ostensibly expands voting rights, or is designed to

15

> remove the elements that caused objection by the Attorney General to a prior
> submitted change, must meet the Section 5 preclearance requirement.

28 C.F.R. § 51.12. The regulations also list examples of changes affecting voting, which include "[a]ny change concerning registration, balloting, and the counting of votes . . . ." 28 C.F.R. § 51.13(b).

Even if the changes in voting procedures or practices "are made in an effort to comply with federal law," the change requires preclearance. *Young*, 520 U.S. at 284. Further, that an alleged change is the result of a state court decision does not protect it from Section 5's preclearance requirements. *See Riley v. Kennedy*, 553 U.S. 406, 421 (2008) ("We have also stated that the preclearance requirement encompasses 'voting changes mandated by order of a state court.'") (quoting *Branch v. Smith*, 538 U.S. 254, 262 (2003)); *Hathorn v. Lovorn*, 457 U.S. 255, 265 n.16 (1982) ("the presence of a court decree does not exempt the contested change from section 5").

The United States Supreme Court has held that, "In order to determine whether an election practice constitutes a 'change,' . . . we compare the practice with the covered jurisdiction's 'baseline.'" *Riley*, 553 U.S. at 421. The Court defines a covered jurisdiction's baseline as "the most recent practice that was both precleared and 'in force or effect'– or, absent any change since the jurisdiction's coverage date, the practice that was 'in force or effect' on that date." *Id.*

Plaintiffs fail to allege a specific change in voting procedures or practices in their complaint. Instead they allege that unspecified changes resulted from (1) the decisions in *Anderson* and *Florence County*, (2) the disqualification of candidates after absentee ballots had been printed and mailed to absentee voters, and (3) the differing interpretations of S.C. Code Ann. § 8-13-1356(A).

16

Nonetheless, the court considers Plaintiffs' likelihood of success on the merits of three voting procedures or practices that have allegedly been changed without preclearance.

**(1)** *Anderson* **and** *Florence County.* First, the court considers whether the State Court's decisions in *Anderson* and *Florence County* resulted in a change in the State's voting practices that has not been precleared. Plaintiffs argue that the State Court's interpretation of § 8-13-1356 in *Anderson* and *Florence County* "placed <u>immediately</u> in force a 'change affecting the eligibility of persons to become or remain candidates, to obtain a position on the ballot in primary or general elections, or to become or remain holders of elective offices . . . .'" Dkt. No. 1 at 9. However, Plaintiffs fail to articulate the baseline, *i.e.*, the precleared practice that was in force and effect prior to the decisions in *Anderson* and *Florence County*. *See Riley v. Kennedy*, 553 U.S. at 421 ("In order to determine whether an election practice constitutes a 'change' as that term is defined in our § 5 precedents, we compare the practice with the covered jurisdiction's 'baseline.'"). Without establishing the baseline, Plaintiffs cannot meet their burden of demonstrating a change in a voting practice or procedure.

The only evidence of the baseline is § 8-13-1356 itself.[12] The plain language of § 8-13-1356(B) requires candidates to file their SEIs "at the same time and with the same official with whom the candidate files a declaration of candidacy or petition for nomination." S.C. Code Ann. § 7-11-15 explains that the SIC must be filed with either the state executive committee of the respective party or the county executive committee of the respective party in the county of residence,

---

[12]    Plaintiffs do not assert that § 8-13-1356 has not been precleared. Section 8-13-1356 was enacted in 1991, effective in 1992. Subsection 1356(B) has not been amended since it was enacted. Plaintiffs similarly do not assert that § 8-13-365 has not been precleared.

depending on the office sought. S.C. Code Ann. § 8-13-365 requires that a broad range of reports and disclosures be filed with the State Ethics Commission electronically. This requirement applies to a variety of public officials in addition to persons seeking public office. The SEI is but one such report. As explained by the State Court in *Anderson I*, "[f]iling an SEI with the State Ethics Commission cannot excuse noncompliance with § 8-13-1356(B)."

Section 8-13-365 was enacted in 2003, effective in 2004. *See supra* note 5. This was 12 years after the filing requirements for candidates for office were enacted in § 8-13-1356. Section 8-13-365 did not amend § 8-13-1356. The legislature could have amended § 8-13-1356 at the same time the Ethics Commission's electronic filing requirement was added, but it did not.

For these reasons, the court concludes that *Anderson I* and the *Anderson* Order interpreted S.C. Code Ann. §§ 8-13-365 and 8-13-1356 consistently with their plain meaning, both internally and as read together. This is the meaning the Justice Department would have understood in granting preclearance for both statutes. Thus, nothing in *Anderson* constitutes a change in law or practice requiring preclearance.

Through its subsequent decision in *Florence County*, the State Court has given effect to its rulings in *Anderson*. Plaintiffs have presented nothing to this court to suggest that the decisions in *Anderson* or *Florence County* constitute a change in law or practice requiring preclearance.[13]

---

[13]  The Election Commission provided guidance to potential candidates in the form of a summary titled "Party Organization & Candidate Filing Reference." This summary correctly indicates that candidates must comply with the requirements of both §§ 8-13-365 and 8-13-1356. It varies, however, from the State Court's interpretation of the two statutes by stating that candidates may satisfy §8-13-1356(B) by delivering a *receipt* to the appropriate party official showing that the candidate filed an SEI with the Ethics Commission online. *See Anderson* Order (clarifying that the filing of a receipt reflecting the online filing of an SEI with the Ethics Commission does not satisfy § 8-13-1356(B)).

**(2) Disqualification of Candidates on Absentee Ballots.** Second, the court considers whether the fact that local party officials certified candidates for inclusion on the absentee ballot, and later decertified certain candidates for failure to meet the qualifications for candidacy, constitutes a change in voting practice or procedure. The court concludes that it does not.

The decertification of certain candidates after absentee ballots have been printed and mailed does not alter or change South Carolina's voting practices. Absentee ballots are mailed 45 days in advance of the election to accommodate voters who will be absent from their voting district on the date of the election. There is always a chance that a candidate included on an absentee ballot may later be disqualified or may voluntarily withdraw from the election. Plaintiffs have not identified any voting procedure or practice which the State has changed by these disqualifications, but have merely alleged candidates were disqualified by operation of *Anderson* and *Florence County* less than 45 days prior to the primary election. The court, therefore, finds that the disqualification of candidates after absentee ballots have been printed and mailed is not a change in South Carolina's voting practices or procedures.

**(3) SEI Filing Requirements of Public Officials.** Finally, the court considers whether the differing interpretations by local political parties and county election commissions as to the scope of S.C. Code Ann. § 8-13-1356(A)'s exemption constitute a voting change subject to preclearance.

---

Although Plaintiffs do not allege that they rely on this document, the court is aware of its existence from *Somers*. *See Somers v. S.C. Election Comm.*, 3:12–CV–1191–CHH–CMC–JMC, 2012 WL 1754094, *2 n.4 (D.S.C. May 16, 2012). Even if Plaintiffs alleged reliance, the court would find that this is not a change under the Voting Rights Act. Although this document contained a misstatement of state law, any practice described or prescribed in this document was not the baseline as it had not been precleared. The erroneous advice contained in the Election Commission summary, therefore, did not modify the procedures which were precleared and in force and effect prior to *Anderson*.

19

Section 8-13-1356(A) makes the filing requirement in Subsection 1356(B) inapplicable to "a public official who has a current disclosure on file [SEI] with the appropriate supervisory office pursuant to Sections 8-13-1110 or 8-13-1140." Section 8-13-1110 describes which public officials are required to file SEIs and requires that an updated SEI be filed annually. According to Plaintiffs, some local political parties have interpreted "public officials" in Subsection 1356(A) to include all persons currently holding any political office that requires submission of an SEI while other local political parties have interpreted "public officials" to be limited to incumbents, *i.e.*, persons seeking to file for re-election to the same office which they currently hold.

These allegations challenge the actions of local political parties. No such entities are named as defendants. Moreover, as the South Carolina Election Commission explained during the court's teleconference, the Election Commission does not certify candidates for office. It follows that the proper defendants for such a claim are not before this court.

Even if the proper defendants were before this court, Plaintiffs' claim would fail as a Voting Rights Act claim because they have not shown which interpretation constitutes the proper baseline.[14] Moreover, to the extent Plaintiffs argue that inconsistent application of a state election law must be a change in voting practices that is subject to preclearance, the court rejects that argument.

---

[14] *Florence County* appears to indicate that the public official exemption to filing an SEI simultaneously with an SIC applies only to incumbents seeking reelection to the same office. *See Florence County*, 2012 WL 1999845 at *2 ("As decided by this Court in *Anderson*, §8-13-1356 requires that a candidate must simultaneously file a copy of an SEI with an SIC unless the candidate already holds *the office* and has an SEI on file with the appropriate supervisory office.") (emphasis added). The State Court does not, however, appear to have been presented with a situation in which one of the putative candidates held some other public office at the time he or she submitted his SIC. Thus, the State Court's apparent interpretation of "public official" in Subsection 1356(A) to be limited to incumbents in the office sought appears to be *dicta*.

20

Inconsistent application simply means that some local officials have misinterpreted and misapplied state law. This is not a change in a voting practice but a violation of a state election law, and subject to challenge in state court. *See United States v. Saint Landry Parish School Bd.,* 601 F.2d 859, 864 (5th Cir. 1979) ("But we can find no case which even hints that actions of a state official which are in conflict with the state's required procedures should be considered a change in voting procedures enacted or administered by the state within the meaning of s [*sic*] 5."); *Miller v. Daniels,* 509 F. Supp. 400, 406 (D.C.N.Y. 1981) ("[T]he present situation is one in which defendants have purportedly acted in violation of precleared election laws that remain in full force. The alleged misconduct of these local election officials does not constitute a 'change' for purposes of section 5."). The court, therefore, finds that the alleged varying interpretations of Subsection 1356(A) have not been shown to be a change from the baseline requiring preclearance.

For these reasons, the court denies Plaintiffs' request for temporary injunctive relief based on alleged violation of the Voting Rights Act.

## II. Constitutional Claims

The court analyzes Plaintiffs' constitutional claims under the normal standard for a temporary restraining order.[15]

---

[15] Plaintiffs seeking either a temporary restraining order or a preliminary injunction must establish all four of the following elements: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F. 3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds,* 558 U.S. ___, 130 S. Ct. 2371 (2010), *reissued in part,* 607 F.3d 355 (4th Cir. 2010), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.,* 550 F.2d 189 (4th Cir. 1977). Plaintiffs must make a clear showing that they are likely to succeed on the merits of their claim. *Winter,* 555 U.S. at 22; *Real Truth,* 575 F.3d at 345-46. Similarly, there must be a clear showing of irreparable harm absent injunctive relief.

(1) **Likelihood of Success on Merits.** Although the bases of their constitutional claims are not entirely clear, Plaintiffs appear to allege both due process and equal protection violations. The equal protection aspect of the claim appears to include both a facial challenge to § 8-13-1356 as a whole and an as-applied challenge to Subsection 1356(A) based on the differing interpretations of this Subsection by local political parties.

Plaintiffs fail to demonstrate a likelihood of success on the merits of their equal protection and due process claims for any facial challenge based on differences in treatment of incumbents and non-incumbents. Plaintiffs allege that the "cumbersome and labyrinthic procedure" of complying with § 8-13-1356 violates equal protection and/or due process because it applies only to non-incumbents, and this differential treatment "has no measurable justification." Plaintiffs have not suggested any theory as to how their rights to due process and equal protection have been violated by the different filing requirements for incumbents and non-incumbents.

Plaintiffs also argue that the differing applications of § 8-13-1356(A) by local political parties throughout the State justify enjoining the election under *Bush v. Gore*, 531 U.S. 98, 104 (2000). First, the United States Supreme Court did not stop the 2000 presidential election but addressed the recounting of ballots after voting had concluded. Second, in *Bush v. Gore*, the Court was presented "with a situation where a state court with the power to assure uniformity has ordered a statewide recount with minimal procedural safeguards." 531 U.S. at 109. The Court reversed the Florida Supreme Court's order to proceed with a recount because the Florida Supreme Court was

---

*Winter*, 555 U.S. at 20-23; *Real Truth*, 575 F.3d at 347. Only then may the court consider whether the balance of equities tips in Plaintiffs' favor. *See Real Truth*, 575 F.3d at 346-47. Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction. *Real Truth*, 575 F.3d at 347 (quoting *Winter*, 555 U.S. at 24).

22

unable to fashion a recount that would not violate the Equal Protection Clause within the time for resolving any election contest as prescribed by law. The court finds *Bush v. Gore* inapplicable to Plaintiffs' allegations. There is no showing here that the South Carolina Supreme Court is unable to fashion a remedy for any improper interpretations of § 8-13-1356(A) by local officials.

Finally, to the extent Plaintiffs rely on the alleged inconsistent application of Subsection 1356(A), they are unlikely to succeed on the merits because the actions complained of were committed by local political parties and county election officials. These parties have not been named as defendants. The court, therefore, concludes that Plaintiffs have not shown a likelihood of success on the merits of either an equal protection or due process claim.

(2) **Irreparable Harm**. Plaintiffs have not shown that they, and the other alleged 215 "similarly-situated" decertified candidates, will be irreparably harmed because they have failed to demonstrate that they are eligible to be on the ballot. As evident by the various cases in state court relating to this election, a forum is available to adequately address the individualized grievances of the decertified candidates. Thus, assuming Plaintiffs are eligible to be on the ballot under state law, Plaintiffs have the ability to seek relief in a more appropriate forum.

(3) **Balance of Equities**. The court finds that the balance of the equities tips in favor of Defendants. Plaintiffs could have brought this action as early as May 2, 2012, when the South Carolina Supreme Court issued its decision in *Anderson I*, which put Plaintiffs on notice that they were required to file a copy of their SEI at the same time they filed their SIC with the appropriate local party official. By May 3, 2012 when the *Anderson* Order was issued, Plaintiffs knew that delivering a paper receipt of the electronic filing of the SEI, or any other alternative short of

23

delivering a paper copy of the SEI, would not fulfill § 8-13-1356(B)'s requirements. Although Plaintiffs argued during the teleconference that some of the Plaintiffs were not decertified until Thursday, June 7 at 4:45 p.m., the court finds that Plaintiffs knew or should have known after *Anderson* that they had not complied with state law as interpreted by the State Court and that they were subject to decertification.

The court finds that the equitable doctrine of laches weighs against Plaintiffs. Laches applies where Plaintiffs' lack of diligence, defined as an inexcusable or unreasonable delay in filing suit, prejudices Defendants. *See Costello v. United States*, 365 U.S. 265, 282 (1961); *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). As explained by the Fourth Circuit in *Perry v. Judd*, "applications for a preliminary injunction granting ballot access have been consistently denied when they threaten to disrupt an orderly election." No. 12-1067, 2012 WL 120076 (4th Cir. Jan. 17, 2012) (affirming district court's denial of emergency motion to place Texas Governor Rick Perry on the ballot in the Virginia Republican Primary based on laches). The court finds that Plaintiffs have unreasonably delayed in filing this action and that the only relief available at this late date would prejudice Defendants. The court, therefore, finds that the doctrine of laches tips the balance of equities in Defendants' favor.

**(4) Public Interest.** The public has an interest in ensuring that the State's primary election is conducted pursuant to state law and that only qualified candidates appear on the ballot. The relief sought by Plaintiffs is not in the public interest as it seeks to add all decertified candidates to the ballot or halt the election at the last minute and without an adequate legal basis.

## CONCLUSION

For reasons set forth above, Plaintiffs' motion for temporary restraining order is denied.

**IT IS SO ORDERED.**

Clyde H. Hamilton
Senior United States Circuit Judge

Cameron McGowan Currie
United States District Judge

J. Michelle Childs
United States District Judge

June 18, 2012
Columbia, South Carolina

25