IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Ann Smith, John Pettigrew, Bob Shirley, Wayne Gilbert, and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> The State of South Carolina State Election Commission, a subdivision of the State of South Carolina,[1] The South Carolina Republican Party, and The South Carolina Democratic Party, <br><br> Defendants. | C.A. No. 3:12-CV-1543-CHH-CMC-JMC <br><br> OPINION AND ORDER |

This matter is before the court on Plaintiffs' second motion for a temporary restraining order ("TRO") and permanent injunction. In their first motion for TRO, filed June 11, 2012, Plaintiffs sought either to have their names restored to the ballot for the June 12, 2012 primary election or to postpone the primary election until this court could resolve the issues raised in this action. Dkt. Nos. 1, 4. On June 11, 2012, a three-judge court denied Plaintiffs' motion for TRO. Dkt. No. 7. After months of sitting dormant, this case has been revived by the filing of an amended complaint on September 21, 2012 (Dkt. No. 18), followed by a motion for TRO and permanent injunction on September 25, 2012 (Dkt. No. 24).

---

[1] The State of South Carolina State Election Commission notes that it is not a subdivision but rather an agency of the State of South Carolina. *See* Dkt. No. 36 at 1.

The same three-judge court has reviewed Plaintiffs' motion and memorandum, and concludes that this motion can be resolved without a hearing.[2] For reasons explained below, the court denies Plaintiffs' motion for TRO and permanent injunction.[3]

## BACKGROUND

Plaintiffs filed this action against the State of South Carolina State Election Commission (the "Election Commission") and the State of South Carolina (the "State") on June 11, 2012, the day before the primary election. At the same time, Plaintiffs filed a motion for TRO and permanent injunction. Dkt. Nos. 1, 4. The five named Plaintiffs[4] in the original complaint were all individuals who sought to be included on the ballot for the June 12, 2012 primary election but were allegedly denied that opportunity due to application of the following decisions of the South Carolina Supreme Court ("State Court"): *Anderson v. South Carolina Election Commission*, 725 S.E.2d 704, 2012 WL 1530655 (S.C. May 2, 2012) ("*Anderson I*"), *rehearing denied* Order No. 2012-05-03-05, 2012 S.C. LEXIS 99 (S.C. May 3, 2012) ("*Anderson* Order")[5] (collectively "*Anderson*"); and *Florence County Democratic Party. v. Florence County Republican Party*, 727 S.E.2d 418, Slip. Op. No. 27128, 2012 WL 1999845 (S.C. June 5, 2012) ("*Florence County*"). These State Court decisions addressed

---

[2] Plaintiffs did not request a hearing. In any event, the court concludes no hearing is necessary.

[3] The court refers to Plaintiffs' current motion for TRO and permanent injunction as "motion for TRO" throughout the remainder of the order.

[4] The original complaint was brought on behalf of five named Plaintiffs and "others similarly situated."

[5] Plaintiffs refer to the *Anderson* Order as *Anderson II*.

2

requirements for filing a Statement of Economic Interest ("SEI") with a Statement of Intention of Candidacy ("SIC") found in S.C. Code Ann. § 8-13-1356.

Plaintiffs alleged a violation of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, based on a failure to preclear changes to voting practices effected by *Anderson I*, the *Anderson* Order, and *Florence County*. Plaintiffs also alleged violations of their equal protection and due process rights. Specifically, Plaintiffs contended that § 8-13-1356, as a whole and on its face, imposes greater burdens on non-incumbents than on incumbents and that § 8-13-1356 ("Subsection 1356(A)") has been applied inconsistently to public officials who are not incumbents in the position sought.

A three-judge court heard argument and denied the TRO that same day. Dkt. Nos. 8, 9. A written order explaining the court's ruling was entered on June 18, 2012. Dkt. No. 10. The court assumes familiarity with the court's prior order. *See Smith v. South Carolina Election Comm'n*, 3:12-CV-1543, 2012 WL 2311839 (D.S.C. June 18, 2012).

Thereafter, the matter appeared to lie dormant, with no evidence even that Defendants had been served. On July 25, 2012, the court directed Plaintiffs to file a status report by August 8, 2012. Dkt. No. 11. Having received no status report, the court issued a Rule to Show Cause Order ("RTSC") on September 14, 2012. Dkt. No. 15.

Plaintiffs responded to the RTSC on September 20, 2012, arguing that their failure to respond to the earlier order should be excused because a computer virus had deleted the deadline from counsel's calendaring system. Dkt. No. 17. They also indicated an intent to file an amended complaint and renewed motion for injunctive relief by the end of the week.

3

On September 21, 2012, Plaintiffs filed an amended complaint.[6] Dkt. No. 18. The amended complaint adds one Plaintiff (Wayne Gilbert) and names three Defendants: one of the two original Defendants (the Election Commission) and two additional Defendants (the South Carolina Republican Party and the South Carolina Democratic Party).[7] The amended complaint repeats the same causes of action – a violation of Section 5 of the Voting Rights Act and an equal protection claim – but seeks different relief because the primary election has occurred. Now, Plaintiffs seek an order requiring that (1) Defendants hold a primary with Plaintiffs' names (and those similarly situated) on the ballot prior to the general election and (2) "the general election with regard to offices affected by the *Anderson I* and *Anderson II* rulings be enjoined until said primaries occur or pending resolution of this matter by this Court." Dkt. No. 24 at 1-2. The amended complaint adds factual allegations based on post-primary events, particularly that Plaintiff Shirley has secured his name on the general election ballot as a petition candidate. The amended complaint also attempts to specify the alleged change in voting procedure requiring preclearance, which the court previously found was not specified in the original complaint or motion for TRO.

Although the amended complaint seeks an "expedited temporary restraining order and permanent injunction," Plaintiffs did not file an accompanying motion. On September 24, 2012, the court entered an order explaining that the court would not act until "(1) the amended complaint is properly served on all Defendants; (2) Plaintiffs file a properly supported motion; and (3) Defendants

---

[6] The amended complaint refers to Exhibits A-N, but only Exhibits A-D were filed on September 21, 2001. On September 25, 2012, Plaintiffs filed Exhibits E-N. Dkt. Nos. 21-23.

[7] The amended complaint drops the following parties: Tommie Reece, Robert Tinsley, and the State of South Carolina.

4

have been afforded some opportunity to file a response." Dkt. No. 20. The court also advised Plaintiffs that should they seek a TRO, Plaintiffs must complete service of the amended complaint and properly supported motion before 5:00 p.m. on September 25, 2012. *Id.* Should Plaintiffs file a motion for TRO, the court ordered Plaintiffs to "expressly address why the current request for relief is not barred by this court's prior orders." *Id.*

On September 25, 2012, Plaintiffs filed a "Motion for and Memorandum in Support of an Expedited Temporary Restraining Order and Permanent Injunction." Dkt. No. 24. Plaintiffs, however, failed to address why the relief requested is not barred by the court's prior orders. In their second motion for TRO, Plaintiffs repeat the TRO relief sought in the amended complaint.

The State responded on September 27, 2012, arguing that the court should deny Plaintiffs' second motion for TRO for the same reasons articulated in the court's prior order. Dkt. No. 31. The Election Commission responded on September 28, 2012, arguing that Plaintiffs' motion for TRO is barred by the court's prior order and explaining how Defendants will be prejudiced by the specific relief requested. Dkt. No. 36. The Democratic Party also responded on September 28, 2012, adopting the Election Commission's response and arguing that it will be prejudiced if the TRO is granted. Dkt. No. 38. The Republican Party responded on the same date, adopting the arguments in the responses filed by the Election Commission and State. Dkt. No. 40. The Republican Party also argued that (1) it is not a party to this action because it has not been served; (2) it is not a proper party because it has no control over the general election; and (3) any relief requested as to the primary election is moot because the primary has been held. *Id.*

## DISCUSSION

### I. Standing

The court previously found that Plaintiffs Smith, Pettigrew, and Shirley have standing to pursue their Voting Rights Act claim and their facial challenge to § 8-13-1356 on equal protection grounds as non-incumbents. 2012 WL 2311839 at *6. The court also found that Plaintiff Shirley has standing to challenge the alleged inconsistent interpretation of § 8-13-1856(A). *Id.* at *7. Nothing in the amended complaint affects the standing of Plaintiffs Smith, Pettigrew, or Shirley.

The court now considers whether the additional Plaintiff, Wayne Gilbert ("Gilbert"), has standing to pursue his claims. *See generally* U.S. Const. art. III, §2 (Article III's case or controversy requirements).[8] Gilbert alleges that he sought to be placed on the Democratic primary ballot as a candidate for Richland County Council District 8. Gilbert contends that on March 30, 2012, the candidate filing deadline, he electronically filed his SEI, and later that day submitted his SIC along with confirmation of his SEI filing. Gilbert claims that he followed instructions provided by the South Carolina Democratic Party that he was to "fill this [SEI form] out online by the end of the filing deadline to be a candidate and must turn in the receipt of completion." Am. Comp. ¶ 5 (citing instructions printed from website of South Carolina Democratic Party). He claims that "after the *Anderson* case was decided," Gilbert was "de-certified as a candidate for Richland County Council

---

[8] To establish standing, (1) a plaintiff must have suffered an "injury in fact," which is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent," not conjectural or hypothetical; (2) the injury must have been caused by the defendant's complained-of actions; and (3) a plaintiff's injury or threat of injury must likely be redressable by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Plaintiffs have the burden of establishing standing. *See id.* at 561.

District 8." *Id.* Gilbert "has not opted to run as a petition candidate." *Id.* Gilbert alleges that the incumbent for this office is currently the Democratic candidate for this seat.

Gilbert sought to be included as a candidate on the ballot of the primary election and has taken some action to qualify as a candidate. As such, he has standing to bring a claim under Section 5 of the Voting Rights Act for alleged changes in voting practices related to qualification and certification of candidates that he alleges have not been precleared. *See Allen v. State Bd. of Elections*, 393 U.S. 544, 572 (1969).

Gilbert also brings a facial challenge to § 8-13-1356, based on alleged violation of his equal protection rights as a result of the additional burdens that § 8-13-1356 imposes on non-incumbents seeking to be candidates. Gilbert is a non-incumbent who is subject to the alleged additional filing requirements under § 8-13-1356 and, therefore, has standing to challenge the statute on equal protection grounds.

Gilbert, however, does not have standing to pursue an as-applied challenge to Subsection 1356(A), which exempts public officials from having to simultaneously file a paper copy of their SEI when they file their SIC. The alleged inconsistent application of the public official exemption arises from two different interpretations of "public official." The narrow interpretation exempts only incumbents, *i.e.* those who seek re-election for the same office and have an SEI on file for that office. The more generous interpretation exempts all public officials, *i.e.* those who hold any office and have an SEI on file for any office. Gilbert does not allege an injury flowing from the alleged inconsistent application of the public official exemption because he does not allege that he held another public office and should have been exempted from filing his SEI at the time he filed his SIC.

Neither does he allege that his opponent benefitted from the application of the generous interpretation because his opponent is the incumbent. Gilbert, therefore, does not have standing to pursue this claim.

In summary, the court is satisfied that all Plaintiffs have standing to bring a claim under Section 5 of the Voting Rights Act and a facial challenge to § 8-13-1356, and that one Plaintiff, Shirley, has standing to bring an as-applied challenge to Subsection 1356(A).

## II. Voting Rights Act

The standards governing a three-judge district court's decision whether to grant an injunction in a Voting Rights Act Section 5 case are addressed in the court's prior order and are incorporated herein by reference. 2012 WL 2311839 at *7-9. In the prior order, the court found that "Plaintiffs fail to allege a specific change in voting procedures or practices in their complaint." *Id.* at 9. Through Plaintiffs' amended complaint and motion for TRO, Plaintiffs have attempted to specify a change in voting procedure and establish a baseline evidencing a change:

> In a series of rulings by the South Carolina Supreme Court on May 2, 2012, May 3, 2012 and June 5, 2012, the South Carolina Supreme Court altered the before then general interpretation of S.C. Code Ann. §8-13-1356, enacted in 1991 and thereafter amended in 1996, and placed immediately in force a "change affecting the eligibility of persons to become or remain candidates, to obtain a position on the ballot in primary or general elections, or to become or remain holders of elective offices" without the State obtaining preclearance from the U.S. Department of Justice. Specifically, the *Anderson I* and *Anderson II* decisions changed the most recent practice for conducting elections in 2010 and 2011 by requiring a paper copy of the SEI to be filed with the party officials at the exact same time that the SIC was filed. **(Exhibit J)**. These actions are in clear violation of the Voting Rights Act of 1965, as amended and as interpreted in 28 C.F.R. §51.13(g).

Am. Compl. ¶ 23. In their motion for TRO, Plaintiffs argue that "[p]rior to the *Anderson* and *Florence* rulings, the 'baseline' practice was that candidates need only prove they filed their SEI with

8

the Election Commission, however, paper copies of the SEI did not have to be provided to the Defendant Parties at the time the SIC was filed." Dkt. No. 24 at 11.

Plaintiffs attach two affidavits to their amended complaint as evidence of the baseline practice: one from State Republican Party Chairman Chad Connelly (Dkt. No. 22-3) and one from Phillip Bowers, Chairman of the Pickens County Republican Party (Dkt. No. 23).[9] According to these affidavits, the State Republican Party took its guidance from the State Ethics Commission and Election Commission, which convinced the Republican Party that paper copies of the SEI were no longer required at the time of filing the SIC. Connelly's affidavit provides, in part:

> 3) Prior to the <u>Anderson</u> decision, the South Carolina Republican Party's practice was to rely on the procedures promulgated by the South Carolina Ethics Commission and the Election Commission. Instructions from the Ethics Commission regarding the Statement of Economic Interests (SEI) were that it was "the only report that needs to be filed online immediately <u>after</u> an individual files as a candidate with the filing officer." (emphasis added). In addition, the Ethics Commission instructions stated that "Paper copies of these reports are no longer accepted."
>
> 4) The South Carolina Republican Party's instructions for the 2012 elections followed the same procedures as those of the 2010 and 2011 elections, and the information we sent to our county officials and candidates reflected the above-mentioned rules and accepted practices of 2010 and 2011.
>
> 5) As a result of the <u>Anderson</u> decision, the South Carolina candidates were required to file a paper copy of the SEI at the same time with the same official. This changed the most recent practice for conducting elections in South Carolina and directly led to the disqualification of numerous non incumbent candidates, many within our own party.

---

[9] Both affidavits were signed August 21, 2012, one month before Plaintiffs filed their amended complaint. It is unclear if these affidavits were prepared for this litigation.

9

Dkt. No. 22-3.[10]

Plaintiffs also attach an affidavit to their motion for TRO. This affidavit is from Dennis Saylor, Chairman of the Aiken County Republican Party, signed July 28, 2012. Dkt. No. 24-2. Saylor's affidavit states that "[p]rior to the May 2, 2012, SC Supreme Court ruling in the Anderson case[,] we had not required the candidates to provide us a paper copy of their statement of economic interests (SEI)." *Id.* Saylor further avers that "[t]he Anderson requirement of providing a paper copy of the SEI at the same time to the same official will change our recent filing procedures." *Id.*

The United States Supreme Court has held that, "[i]n order to determine whether an election practice constitutes a 'change,' . . . we compare the practice with the covered jurisdiction's 'baseline.'" *Riley*, 553 U.S. at 421. The Court defines a covered jurisdiction's baseline as "the most recent practice that was both precleared and 'in force or effect'– or, absent any change since the jurisdiction's coverage date, the practice that was 'in force or effect' on that date." *Id.*

---

[10] Bowers' affidavit provides, in part:

Prior to the May 2, 2012, SC Supreme Court ruling in the Anderson case, candidates were not required to provide a paper copy of their Statement of Economic Interest (SEI) form and also file on-line. Some candidates did have paper copies of their SEI when they filed their SIC, but paper copies were not retained pursuant [*sic*] Section 8-13-365, which requires that the SEI form "must be filed using an Internet based filing system as prescribed by the commission".

The Anderson requirement of providing a paper SEI when submitting a SIC, and filing a SEI on-line, changed our filing procedures resulting in disqualification of seven (7) previously qualified Republican candidates in Pickens County.

Dkt. No. 23.

Although Plaintiffs have attempted to establish the practice that was "in force or effect" immediately prior to *Anderson I*, the *Anderson* Order, and *Florence County*, Plaintiffs have failed to establish that this practice was precleared. As explained in the court's prior order,

> The Election Commission provided guidance to potential candidates in the form of a summary titled "Party Organization & Candidate Filing Reference." This summary correctly indicates that candidates must comply with the requirements of both §§ 8-13-365 and 8-13-1356. It varies, however, from the State Court's interpretation of the two statutes by stating that candidates may satisfy § 8-13-1356(B) by delivering a *receipt* to the appropriate party official showing that the candidate filed an SEI with the Ethics Commission online. *See Anderson* Order (clarifying that the filing of a receipt reflecting the online filing of an SEI with the Ethics Commission does not satisfy § 8-13-1356(B)).
>
> Although Plaintiffs do not allege that they rely on this document, the court is aware of its existence from *Somers*. *See Somers v. S.C. Election Comm.*, 3:12–CV–1191–CHH–CMC–JMC, 2012 WL 1754094, *2 n.4 (D.S.C. May 16, 2012). Even if Plaintiffs alleged reliance, the court would find that this is not a change under the Voting Rights Act. Although this document contained a misstatement of state law, any practice described or prescribed in this document was not the baseline as it had not been precleared. The erroneous advice contained in the Election Commission summary, therefore, did not modify the procedures which were precleared and in force and effect prior to *Anderson*.

2012 WL 2311839 at *10 n.13. To the extent this portion of the prior order was *dicta*, the court now adopts it in full. The court reaffirms that, to the extent the Election Commission or the Ethics Commission gave erroneous advice and subsequent procedures were adopted in reliance on this advice, this would not change the baseline under the Voting Rights Act.[11] Plaintiffs have made no

---

[11] Not all local political parties and county election officials failed to follow the clear language of § 8-13-1356. However, the confusion that did arise appears to have been a result of implementation of mandatory electronic filing of SEIs. As explained in the court's prior order, "Section 8-13-365 did not amend § 8-13-1356." 2012 WL 2311839 at *10. Plaintiffs have not alleged that, prior to implementation of mandatory electronic filing of SEIs, paper copies of SEIs were not required to be submitted at the same time as submission of SICs.

11

attempt to establish that the procedure alleged to be in force or effect was also precleared. Because the baseline is the last practice both precleared and in force or effect, the baseline is § 8-13-1356.[12]

The court, therefore, finds that *Anderson I* and the *Anderson* Order was not a change because Plaintiffs have not established that compliance with the plain language of § 8-13-1356 is a change from the baseline. For these reasons and those set forth in the court's prior order, the court denies Plaintiffs' request for injunctive relief based on alleged violation of the Voting Rights Act.

## III. Constitutional Claims

The court analyzes Plaintiffs' constitutional claims under the normal standard for a temporary restraining order.[13]

**(1) Likelihood of Success on the Merits.** In their motion for TRO, Plaintiffs have failed to present new arguments for their facial challenge to Subsection 1356(A). Rather, Plaintiffs attempt to support their as-applied challenge to Subsection 1356(A) based on alleged inconsistent application of the public official exemption "from county to county and party to party" by the "Defendant Parties and the executive branch." Dkt. No. 24 at 17. Despite the addition of two political parties and reference to recent state court decisions, Plaintiffs still fail to show a likelihood of success on the merits as to their as-applied challenge.

---

[12] As explained in the court's prior order, the State Court in *Anderson* and the *Anderson* Order "interpreted S.C. Code Ann. §§ 8-13-365 and 8-13-1356 consistently with their plain meaning, both internally and as read together." 2012 WL 2311839 at *10. The court concluded that "[t]his is the meaning the Justice Department would have understood in granting preclearance for both statutes." *Id.*

[13] The court set forth the standard for a temporary restraining order in the court's prior order. *See Smith*, 2012 WL 2311839 at *11 n.15.

12

In the court's prior order, the court found that "to the extent Plaintiffs rely on the alleged inconsistent application of Subsection 1356(A), they are unlikely to succeed on the merits because the actions complained of were committed by local political parties and county election officials" and "[t]hese parties have not been named as defendants." 2012 WL 2311839 at *12. Plaintiffs have attempted to remedy this deficiency by attributing the inconsistent application of Subsection 1356(A) to "Defendant Parties and the executive branch." Plaintiffs have not, however, added any factual allegations that the Defendant Parties – the South Carolina Republican and Democratic Parties – or "the executive branch" have certified or decertified candidates based on Subsection 1356(A).

To the extent that Plaintiffs argue that recent "disparate rulings by South Carolina's Circuit Courts" as to the public official exemption violate Plaintiffs' equal protection rights, Plaintiffs have failed to recognize that the proper remedy for challenging inconsistent lower state court rulings as to state election law is an appeal to a higher state court. Plaintiffs have also failed to suggest a theory as to why either the narrow or generous interpretation of Subsection 1356(A) violates their equal protection rights. Instead, they focus on the different interpretations of the exemption by local political parties, county election officials, and state circuit court judges. Plaintiffs fail to provide any new legal theory as to how the inconsistent application of the public official exemption is a violation of equal protection or due process rights.

For the reasons stated in the court's prior order and above, the court finds that Plaintiffs have not shown a likelihood of success on the merits of their equal protection claim. To the extent Plaintiffs still assert a due process claim, the court also finds that Plaintiffs have not shown a

likelihood of success on the merits because they have failed to advance any theory based on due process grounds.

**(2) Irreparable Harm.** Plaintiffs have failed to show that they, or the other alleged "similarly-situated" decertified candidates, will be irreparably harmed because they can pursue their right to be on the ballot in state court. They could have brought a pre-primary challenge in state court and they can bring a post-primary challenge there. Thus, assuming Plaintiffs are eligible to be on the ballot under state law, Plaintiffs have the ability to seek relief in a more appropriate forum.

**(3) Balance of Equities.** The court once again finds that the balance of the equities tips in favor of Defendants. Plaintiffs' original motion for TRO was denied on June 11, 2012 and the primary was held on June 12, 2012. Plaintiffs did not file a motion to reconsider the court's order, and did not appeal the court's decision. Neither did Plaintiffs immediately file an amended complaint. Instead, Plaintiffs waited more than three months to file an amended complaint on September 21, 2012. In the meantime, Plaintiffs' Counsel failed to respond to the court's order to file a status report. When Counsel finally made a report to the court, Counsel explained that she failed to file her status report because a computer virus deleted the deadline from Counsel's calendaring system. Further, Plaintiffs' Counsel failed to follow the court's latest order, which expressly required that if Plaintiffs filed a motion for TRO, they address why the current relief requested is not barred by the court's prior orders.

The court finds that the equitable doctrine of laches weighs against Plaintiffs. *See Costello v. United States*, 365 U.S. 265, 282 (1961); *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). Plaintiffs have unreasonably delayed in filing the amended complaint even without consideration

of Plaintiffs' failure to respond to the order requiring them to file a status report.[14] In addition, the only relief available at this date would cause substantially more prejudice to Defendants than similar relief sought at an earlier time.[15] The court, therefore, finds that the doctrine of laches tips the balance of equities in Defendants' favor even if relief was otherwise warranted.

**(4) Public Interest.** The public has an interest in ensuring that the State's general election is conducted pursuant to state law and that only qualified candidates appear on the ballot. The relief sought by Plaintiffs is not in the public interest as it seeks to hold primaries with all decertified candidates and enjoin the general election "with regard to offices affected" without adequate legal basis.

## IV. Permanent Injunction

In Plaintiffs' motion for TRO, Plaintiffs also seek a permanent injunction. The standard for a permanent injunction is "essentially the same" as for preliminary injunctive relief, "with the exception that the plaintiff must show . . . actual success [on the merits]." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). Plaintiffs have failed to make a showing of likelihood of success on the merits, and certainly have not made a showing of actual success. The court, therefore, denies Plaintiffs' request for permanent injunction.

---

[14] Plaintiffs have offered no explanation for the three-month delay after denial of their first motion for TRO and before filing of their amended complaint. The court notes that the affidavits supporting the amended complaint were signed on August 21, 2012, and the affidavit attached to their motion for TRO was signed on July 28, 2012.

[15] The prejudice to Defendants is explained in the Election Commission's response to Plaintiffs' motion for TRO on pages 6-8. Dkt. No. 36 at 6-8.

## CONCLUSION

For reasons set forth above, Plaintiffs' motion for temporary restraining order and permanent injunction is denied. Because the court has denied all relief sought by Plaintiffs, this action is dismissed with prejudice.[16]

**IT IS SO ORDERED.**

Clyde H. Hamilton
Senior United States Circuit Judge

Cameron McGowan Currie
United States District Judge

J. Michelle Childs
United States District Judge

October 3, 2012
Columbia, South Carolina

[16] In addition to a TRO and permanent injunction, Plaintiffs seek "attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988." Dkt. No. 18 at 15. Plaintiffs are not eligible for attorneys' fees under § 1988 because Plaintiffs did not prevail. Any request for attorneys' fees and costs is, therefore, denied.